Lillie Mae POINTER,
Plaintiff-Respondent,

v.

EDWARD L. KUHS CO., a Corporation and Irvan Oberbeck, Individually and as Trustee for N.R. Kuhs and Lester Kuhs, Defendants-Appellants.

No. 46120.

Missouri Court of Appeals,
Eastern District,
Division One.

July 31, 1984.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
Sept. 18, 1984.

Application to Transfer Denied
Nov. 20, 1984.

**838**

C. William Portell, Jr., St. Louis, Mo., for defendants-appellants.

Gary R. Sarachan, Scot Boulton, St. Louis, for plaintiff-respondent.

STEWART, Judge.

Action by Lillie Mae Pointer against Edw. Kuhs Realty Co., a corporation, Irvan E. Oberbeck, an employee of the corporation, and Lester H. Kuhs, manager of the corporation, involving defendants' actions as real estate brokers. In this court tried case, the court made findings of fact and conclusions of law and entered judgment against all defendants jointly and severally for actual and punitive damages and attorney fees aggregating $61,077.86. Defendants were also enjoined from foreclosing on one parcel of property owned by plaintiff.

We affirm.

The primary issue in this case is the applicability of the Merchandising Practices Act, Chapter 407 RSMo 1978 under the facts of this case.

In setting forth the facts we defer to the findings of the trial court on the issue of credibility. Rule 73.01(c)(2); *State ex rel. Danforth v. Independence Dodge Inc.*, 494 S.W.2d 362, 367 (Mo.App.1973). Plaintiff owned a house at 5210 Cote Brilliante that was encumbered by a first deed of trust. She had purchased this house as her home but found that it was too large for her and wanted to sell it. She also owned property at 2029 Gano Avenue in joint tenancy with her son, which was free of encumbrance. The house on Gano was occupied by her son and his wife. They were to have paid rent but they did not.

Plaintiff listed the properties for sale with Kuhs Realty through Mr. Oberbeck. On February 5, 1980, Kuhs Realty obtained a contract on the Cote Brilliante property

for $13,500.00 contingent upon FHA financing. The purchaser gave Kuhs Realty $400.00 earnest money. Certain improvements had to be made to the house before it complied with FHA standards. Plaintiff was unable to pay for the repairs. Kuhs Realty agreed to advance the money for repairs with the understanding that repayment would be made from the proceeds of the sale of that property.

On May 23, 1980, Kuhs Realty had plaintiff sign a note in the sum of $3,500.00 to cover the estimated cost of repair and a note for $210.00 to cover interest on the note for six months.

The repairs were made and the purchaser moved into the house but then failed to consummate the sale. The repairs as finally tabulated amounted to $3,922.85. Half of the forfeited earnest money, $200.00, and a payment of $50.00, was credited to this account, leaving a balance of $3,672.85.

On January 16, 1981, a contract for $6,500.00 was obtained on the Gano property from a Ms. Williams, who made a $500.00 earnest money payment. She was to pay the balance by way of a note for $3,500.00 secured by a first deed of trust to Kuhs Realty. Plaintiff was to receive a note for $2,500.00 secured by a second deed of trust. Closing was held on Saturday, March 14, 1981. Plaintiff signed a warranty deed to Williams. Williams executed a note payable to N.R. Kuhs for $3,500.00 secured by first deed of trust which showed Oberbeck as trustee and N.R. Kuhs as beneficiary. She also executed a note in the sum of $2,500.00 secured by a second deed of trust. These documents were made to the same parties named in the first note and deed of trust. N.R. Kuhs is the daughter of Lester Kuhs and is used by Kuhs Realty as a straw party in their transactions. The second deed of trust was put in the name of the straw party without plaintiff's knowledge or consent. Mr. Oberbeck testified that plaintiff was to receive $3,500.00 at closing but the money was not paid because it was Saturday and the title had not been brought up to date.

Kuhs Realty gave Ms. Williams a statement which showed a balance due of $383.69 for expenses such as certificates of title, service charges on the loan, and other items customarily charged to the purchaser. Ms. Williams gave Kuhs Realty a check in that amount.

On the following business day, March 16 or on the 17th, Oberbeck telephoned plaintiff and told her that Ms. Williams did not want to go through with the sale and that the only thing to do would be to get a deed reconveying the property to plaintiff. The documents executed at the closing had not yet been recorded. On March 20, Mr. Oberbeck, knowing that Williams was not going to honor her commitment, recorded the warranty deed to Williams and the deeds of trust on the property that had been executed by her. He then obtained a warranty deed from Ms. Williams reconveying the Gano property to plaintiff. No reference was made to the deeds of trust in the warranty deed, although Mr. Oberbeck himself had recorded the deeds of trust. Mr. Oberbeck delivered the warranty deed to plaintiff and told her that she owned the property "free and clear." Mr. Oberbeck testified that he had to pay Ms. Williams $25.00 in order to get her to sign the warranty deed. Ms. Williams never received the $25.00.

The check in the sum of $383.69 that was given by Ms. Williams to cover costs attributed to her as purchaser did not clear.

At a later date, Kuhs Realty obtained a contract on the Cote Brilliante property for $10,500.00. The sale was closed on June 15, 1981. The statement given to plaintiff at that time shows that after payment of the first deed of trust in the amount of $6,786.50 and other expenses including sales commission, there was a balance due plaintiff in the sum of $3,188.79. Mr. Oberbeck testified that plaintiff was not paid at that time because the deeds had not been "checked out" and that all of the bills

on the Cote Brilliante property were not yet in.

Defendants later contacted plaintiff and told her that the figures were ready. She went to Kuhs Realty on June 20 and was given a credit statement showing the credit of $3,188.97 on the sale of Cote Brilliante less $1,007.32 paid to Baden Bank and $1,464.57 as balance due with respect to the Gano property. The balance shown as due plaintiff was $717.08.

Plaintiff was also given a statement "Re Gano property" dated June 18, 1981. Included in the debits were the expenses that had been charged to Ms. Williams in the Gano closing, the advance made on Cote Brilliante of $3,672.85, the $25.00 cash advance to Ms. Williams that she did not receive, the repair costs, the sales commission of $390.00 for Gano and "3 months payments on first Deed of Trust P.I.T.T." of $406.53. The total indebtedness was $5,226.99. The credits included the $3,500.00 first deed of trust on the Gano property, $250.00 as one half of the earnest money from Ms. Williams, and a further credit of $12.40.

Plaintiff also received a payment book which showed credits for payments due on 4/14/81, 5/14/81 and 6/14/81 under Ms. Williams' note secured by the deed of trust on Gano. The date of payment is shown as June 15, 1981, the date of the closing on Cote Brilliante.

When plaintiff got the payment book and the statement of June 16, 1981, she was advised for the first time that the Gano property was encumbered with a first deed of trust. Mr. Oberbeck and Mr. Kuhs told her that she owed the money on the note signed by Ms. Williams. She advised Mr. Oberbeck and Mr. Kuhs that she did not understand the statement, asked why she was paying for her own house, and said she was going to see her lawyer. Plaintiff took the check for $717.08 because she needed money at that time.

Nothing was said to plaintiff at the closings on Gano or Cote Brilliante, or on June 15, 1981, about the note of plaintiff in the sum of $3,500.00 that was held by Kuhs Realty to cover repairs at Cote Brilliante. At the trial, Mr. Oberbeck produced the notes and testified that he had marked them "paid," but that he did not know when they had been marked paid.

On June 30, 1981, plaintiff's attorney wrote to Kuhs with respect to the above transactions. On August 5, 1981, Kuhs Realty wrote to Ms. Williams sending a copy of the letter to plaintiff accelerating the note and making demand for payment prior to foreclosure.

On July 27, 1981, Lester Kuhs as assignee of N.R. Kuhs executed and recorded a deed of release as to the second deed of trust. The deed of release recited that the note mentioned in the deed of trust had been paid. Plaintiff was not consulted about the release of the second deed of trust. Thereafter foreclosure proceedings were commenced.

Lester Kuhs furnished all of the figures for the various statements. It was admitted by defendants that the acts of Mr. Kuhs and Mr. Oberbeck were within the scope of their responsibility.

Defendant's primary contention is that plaintiff failed to make a submissible case because (1) § 407.025 is not applicable to real estate transactions; (2) "plaintiff failed to show that her purchase, if any, was for personal, family or household purchases;" (3) plaintiff failed to show that notice of the filing of the suit was given to the Attorney General.

The Merchandising Practices Act, Chapter 407 RSMo 1978, provides the state may take action under § 407.020 to prohibit unfair and deceptive merchandising practices. Private actions may be brought under § 407.025 for unfair or deceptive practices. Section 407.025 provides:

> Any person, who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of mon-

ey or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action. . . .

§ 407.025.1 RSMo 1978.

To determine what methods, acts or practices are condemned, we must refer to § 407.020 which reads as follows:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, is declared to be an unlawful practice.

The term merchandise is defined in § 407.010 as "any objects, wares, goods commodities, intangibles, real estate or services." § 407.010(4).

We have held that in an action by a purchaser for unfair and deceptive practices against the owner and the agents of the owner in sale of real estate is within the purview of 407.020 but not covered by 407.025. *Schimmer v. H.W. Freeman Construction Co.,* 607 S.W.2d 767, 769 (Mo.App.1980). The Supreme Court has cited this case with approval in holding that lessees may not sue a lessor for unfair and deceptive practices under § 407.025.1. It held that in omitting the word "merchandise," used in § 407.020, and authorizing private actions to any person who purchases or leases goods or services "the legislature excluded real estate transactions from the scope of the private right of action provision." *Detling v. Edelbrock,* 671 S.W.2d 265 at 273 (Mo.1984).

In each of the above cases an interest in real property was conveyed as between the parties. The situation in this case can be distinguished. There was no transfer of any interest in real property as between the parties to this action. Plaintiff re-

tained defendants as her agents. As interpreted by this court and by the Supreme Court, § 407.025.1 limits the application of the statute to the purchase of "goods or services."

By statutory definition:

A 'real estate broker' is any person, co-partnership, association, or corporation . . . who, for another, and for a compensation or valuable consideration, . . . does, or attempts to do, any or all of the following:

(1) Sells, exchanges, purchases, . . . real estate;

(2) Offers to sell, exchange, [or] purchase, . . . real estate;

(3) Negotiates or offers or agrees to negotiate the sale, exchange, [or] purchase, . . . of real estate;

(4) Lists or offers or agrees to list real estate for sale, . . . or exchange; . . . .

(10) Negotiates or offers to negotiate a loan secured or to be secured by a deed of trust or mortgage; . . .

§ 339.010.1 RSMo 1978.

▪ The loss to plaintiff, as discussed hereafter, was occasioned by the acts of defendant in the performance of services as real estate brokers. There was no exchange of any interest in real property between the plaintiff and defendants. That plaintiff may have suffered the loss of real property does not exclude this action from the contemplation of § 407.025.1. This section provides an action for persons who suffer a ". . . loss of money or property, *real* or personal" and who otherwise come within the purview of § 407.025.1. We hold that plaintiff purchased the services of the defendants within the meaning of § 407.025.

Defendants further contend that "plaintiff failed to show that her purchase, if any, was for personal, family or household purposes.

▪ The trial court made a finding that plaintiff retained the services of the de-

fendants for personal purposes. We find no cases which specifically define this statutory phrase; however, the facts in this case are such that an extensive discussion of the law is unnecessary. The Cote Brilliante property had been purchased as a home for plaintiff. After the purchase she determined that the house was too large for her and she engaged the services of defendants who obtained a contract for the sale of the house. The purchaser moved into the house but was not financially able to complete the sale. She lived in the house for five months paying only one month's rent. Plaintiff wanted to sell this property, she did not want to rent it. The Gano property was purchased to provide a home for plaintiff's son and his wife. The consideration was paid by plaintiff but title was placed in the names of plaintiff and her son as joint tenants. The son was to have paid plaintiff only $70.00 per month but made no payments. Had plaintiff predeceased her son, her son would have had fee simple title in the property. After the sales contract was obtained a title search revealed that there was a judgment against the son. The judgment was satisfied to clear title. Mr. Oberbeck recommended that title be transferred to plaintiff so no other judgment that might be obtained against the son would affect the title. Under these facts, there was sufficient evidence to permit a finding that the property was purchased for personal or family purposes.

Defendants next complain that the notice requirement was not given to the Attorney General of Missouri.

The statute provides:

Upon commencement of any action brought under subsection 1 of this section the plaintiff or plaintiffs shall mail a copy of the complaint or other initial pleading to the attorney general and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general.

§ 407.025.7

■ This section of the statute makes no provision for action on the part of the attorney general upon receipt of notice of proceedings under § 407.025. It appears that notice of the proceedings is for the information of the attorney general, and not for the defendant. Furthermore, defendants waived their complaint by trying the case without raising this issue. See *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d at 307. Under such circumstances we hold that the notice provided by 407.025.1 is not jurisdictional and the failure to give notice does not require dismissal in this case.

■ The defendants next contend that: "The trial court erred in finding that in Count I the recording of a warranty deed and two deeds of trust by defendants on March 20, 1981 was unlawful merchandising practice because a sale of the subject premises, 2029 Gano, had been consummated on March 14, 1981, and they owed a duty to the parties thereto to record."

A closing was set on Saturday March 14, 1981. The plaintiff executed a deed to the purchaser who executed a first and second deed of trust. Mr. Oberbeck testified that plaintiff was to receive $3,500.00 but she was not paid on that day because the title had not been "finally checked out" and the deed recorded. Kuhs Realty, the agent for plaintiff, retained possession of the deed. Before the title could be checked out and the deeds recorded, Mr. Oberbeck called plaintiff and advised her that Ms. Williams would not go through with the sale; that the only thing to do was to take back the property. He did not tell plaintiff that she could enforce the contract. The delivery of the warranty deed to Kuhs Realty was conditional. Before the condition was met Ms. Williams repudiated the sale. The warranty deed was never effectively delivered to and accepted by the purchaser. The sale was not consummated because the title did not pass to Ms. Williams. *Underwood v. Gillespie*, 594 S.W.2d 372, 374 (Mo.App.1980); 23 Am.Jur.2d *Deeds* § 174. This action of Kuhs Realty in recording the

warranty deed and the deeds of trust resulted only in encumbering plaintiff's property.

The defendants treated the transaction as if no sale had taken place. The initial seller's "Sale Statement" with respect to the Gano property dated March 14, 1981, was given to plaintiff before the sale was repudiated. It charged plaintiff a sales commission of $390.00. The statement given plaintiff June 18, 1981, charged her with the sales commission and gave her credit for $250.00 and one-half of the $500.00 earnest money. Kuhs Realty retained the balance of the earnest money. Mr. Kuhs and Mr. Oberbeck who had been active in real estate for 56 years testified that they were aware of the following provisions of the sales contract:

"Earnest money shall be retained by agent . . .; if sale is closed earnest money to apply to sales commission . . . if sale be not closed by date fixed therefor owing to failure of performance by purchaser earnest money shall be forfeited by purchaser. . . Forfeited earnest money shall go first toward reimbursing expenses of agent incurred in this transaction and balance to go one-half to seller and one-half to agent in lieu of commission."

In taking one-half of the earnest money Kuhs Realty treated the transaction as failure on the part of purchaser to complete the sale so as to effect a forfeiture of the earnest money. Even in treating the earnest money as forfeited defendants failed to conform to the provisions of the sales contract. They should have taken credit for expenses incurred by Kuhs Realty in the transaction, and then divided the balance. They nevertheless charged plaintiff with all of the expenses incurred in the transaction. Mr. Kuhs testified that the earnest money was split "fifty-fifty" because if there is no sale Kuhs Realty is entitled to one-half.

■ There was sufficient substantial evidence from which the trial court could have found that a sale had never been consummated. It follows, as the trial court concluded, that the recordings of the warranty deed and the two deeds of trust were nullities. The recordings only served to cloud plaintiff's title and was a deceptive practice on the part of defendants.

■ Had there been a sale, defendants acted fraudulently and deceptively in filing the first deed of trust. When defendants advised plaintiff that Ms. Williams was not going to complete the sale, Mr. Oberbeck assured plaintiff that the Gano property would be hers "free and clear" of encumbrances. She received a warranty deed, drawn by defendants after they had filed the deeds of trust, which purported to reconvey the property to her free and clear of encumbrances. Plaintiff did not agree to assume nor did she agree to pay the underlying note. Without consulting plaintiff, defendants charged her $406.53 representing three monthly payments on Ms. Williams' note from the proceeds of the sale of Cote Brilliante. They then advised her that she was liable on the Williams' note and when further payments were not made they began foreclosure proceedings. The representation of defendants to plaintiff that she would receive the property free and clear was false. In furtherance of the deception, they delivered to plaintiff a deed that warranted the property to be free and clear. The defendants thus caused her to believe that there were no encumbrances on the property. Plaintiff relied upon the representations to her damage.

Although the seller's statement prepared by Kuhs Realty on the Gano property shows $2,500.00 as a second deed of trust to plaintiff, Kuhs treated the note and deed of trust as its own. There is no evidence that the second deed of trust and note was endorsed by N.R. Kuhs to plaintiff. Lester Kuhs released the deed of trust acknowledging payment of the underlying note without plaintiff's knowledge or consent. Assuming a sale occurred, Kuhs' actions would place it in the position of the owner

of the second deed of trust and indebted to plaintiff in the sum of $2,500.00 with interest from the date of the note.

If we were to hold that plaintiff owned the note we find no evidence that plaintiff intended to discharge Ms. Williams' personal liability on the note. Although the security merged into the estate the note was valid and not extinguished. *Londoff v. Garfinkel*, 467 S.W.2d 298, 300–301 (Mo. App.1971). See *McCrory v. Little*, 136 Ind. 86, 35 N.E. 836 (1893); *Reser v. Century Trading Co.*, 618 S.W.2d 917 (Tex.Civ.App. 1981). Kuhs' actions as assignee of N.R. Kuhs deprived plaintiff of this asset.

Defendants next claim that the trial court erred in finding that certain deductions on the statement of June 18, 1981, constitute unlawful merchandising practices.

Most of the items deducted are those customarily paid by the purchaser in a sale of property. As to those items Kuhs Realty charged to the purchaser, it accepted her check in payment, according to defendants' testimony that check did not clear. There is no evidence that Kuhs made any effort to collect on Ms. Williams' check. Kuhs charged plaintiff because it "had to collect from somebody." Defendants' deductions were inconsistent with its declaration of a forfeiture of the earnest money, which conceded that no sale had taken place. Where there is no sale the sales contract provides that earnest money "shall go first toward reimbursing expenses of agent in this transaction ..." Rather than take the expenses that they incurred in the transaction out of the earnest money deposit defendants took one-half of the earnest money and charged all of the expenses of the transaction to plaintiff.

■ Among the other deductions made by defendants was the sum of $406.53, representing 3 months payments on the note of Ms. Williams. The deception involved in Kuhs' treatment of this note as its own has been discussed above; we will not discuss it further here. The defendants also contend they were entitled to the commission of $390.00. Having taken the position that there was no sale they can not complain about disallowance of the sales commission. When the broker, as an agent of the seller, who lists property with him, breaches his duties of loyalty, fidelity and good faith, thereby hindering or prejudicing any interest of his principal in respect to the transaction loses his right to commission. *United Farm Agency, Inc. v. Murphy*, 596 S.W.2d 730, 734–735 (Mo.App. 1980).

■ Defendants urge us to hold that plaintiff was estopped to challenge the deductions because she did not object to said expenses, but accepted defendants' corporate check for the net amount. This contention is devoid of merit. Estoppel is an equitable remedy requiring circumspection in its application. It may not be used where it would result in fraud. *Block v. Block*, 593 S.W.2d 584, 590 (Mo.App.1980).

■ As we understand the next issue, defendants claim that Kuhs Realty was entitled to set off Ms. Williams' $3,500.00 note against plaintiff's debt to it. As we have previously held there was no sale, thus there is no valid first deed of trust. If there had been a sale plaintiff would be entitled to receive her property "free and clear" as promised and warranted by defendants. Further, plaintiff never agreed to assume and pay Ms. Williams' obligation under the note. We find no merit to this contention.

Defendants contend that the trial court erred in assessing actual and punitive damages on Count I because "plaintiff failed to make a submissible case under Chapter 407 RSMo 1978..." and that punitive damages are improper when not supported by actual damages.

■ Having held that plaintiff made a submissible case under § 407.025.1, it follows that the court did not err in assessing actual and punitive damages.

We have reviewed the other points raised by defendants; many have been ruled by what we have said above, the others are without merit.

Plaintiff has filed motions to dismiss the appeal and to strike documents from the file. These motions are denied.

Plaintiff's pleading and proof would support a judgment against the defendants in common law fraud or under § 407.025.1. The trial court could enter judgment under § 407.025.1. We find no error and we affirm the judgment of the trial court.

KELLY, P.J., and SNYDER, J., concur.