**Orlin & Joyce CALLICOAT, Appellants,**

v.

**ACUFF HOMES, INC. & Dusty Rhodes, Inc., Respondents.**

**No. WD 38428.**

Missouri Court of Appeals,
Western District.

Jan. 20, 1987.

1. Section 570.030 has since been revised and appears in RSMo 1986.

R. Brian Hall & Deborah D. Conklin of Gunn, Hall & Stahl, Gladstone, for appellants.

David B. Sexton & J.C., Hambrick, Jr. of Schulz, Bender, Maher & Blair, P.C., Atty. Gen., Kansas City, for respondents.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This is a civil action seeking recovery of monies for damage to residential property. The judgment is affirmed.

Appellants present four points which, in summary, charge the trial court erred (1) in granting summary judgment for respondents on appellants' claim of fraud; (2) in abusing its discretion by refusing appellants' request to recall a witness; (3) in granting a summary judgment for respondents on appellants' claim that respondents violated the Merchandising Practices Law; and (4) in submitting the verdict-directing instruction.

The record discloses the following pertinent facts:

Appellants, plaintiffs at trial (and hereinafter referred to as the Callicoats), contracted with respondent Acuff Homes, Inc. (hereinafter referred to as Acuff) for the purchase of a residence in a subdivision named Brooktree located within the city of Gladstone, Clay County, Missouri. Acuff was the builder and developer of the subdivision. After seeing model homes, the Callicoats decided upon a particular model named Sycamore. Modifications to the Sycamore plan were agreed upon, and the parties entered into a contract whereby Acuff would build and the Callicoats would purchase a residence. There was evidence that the Callicoats obtained and relied upon certain advertising literature provided by Acuff. The residence was constructed and

title was transferred by warranty deed to the Callicoats on November 23, 1972. The Callicoats moved into the residence and continued to live there.

In October of 1983, the Callicoats were preparing to go to work one morning when they observed they could not open their garage doors. They also observed a separation between the floor and the wall which separated their garage from an adjoining all-purpose room. This separation was between one and one and one-half inches (1″ —1½″) long. They also observed that other doors would not open, there was wrinkling of some walls, the supporting I-beam in the garage had fallen, and there were gaps at the top of the doors.

The Callicoats then contacted several repair companies before entering into a contract with the May Developing Company, which made various repairs totaling approximately $3,600.00. During the investigative and repair period, it was determined that there was no footing placed under the wall separating the garage from the rest of the residence. This wall was described as a load-bearing wall. It was also disclosed that during the time of construction, there was a Uniform Building Code in effect.

This action was commenced after Acuff disclaimed any responsibility. The case went to trial on the Callicoats' third amended petition, which contained three counts. Count I was for breach of implied warranty. Count II was for violation of the Merchandising Practices Law. Count III was for fraud and misrepresentation.

At trial, the Callicoats' evidence included their consideration of taking their loss as a tax deduction, plus the opinion of a realtor of the before and after value of the property relative to the damage.

By way of defense, Acuff admitted to building the residence. As to the placing of the footing, Acuff had no recall, but testimony disclosed that construction followed the plans and specifications. The architect who drew the plans testified that it was not necessary to add the footing. A consulting engineer testified for Acuff, stating that the footing was not necessary.

The defense was that water had seeped beneath the residence and caused the soil beneath to change and shift, thus resulting in the garage flooring dropping down, which in turn caused the other damage.

On motion by Acuff, the trial court entered summary judgment for Acuff on Counts II and III. The case was submitted to the jury on Count I. The jury returned its verdict for Acuff. This appeal followed the denial of timely-filed post-trial motions. Any other facts deemed applicable will be disclosed within the disposition of the errors alleged by the Callicoats.

Under their point (1), the Callicoats assert the trial court erred in granting summary judgment for Acuff on their claim for fraud and misrepresentation. They assert their evidence was sufficient to submit the claim to the jury.

The Callicoats argue that their claim for fraud and misrepresentation was based upon Acuff's duty to disclose to them that the residence was constructed without the footing, as that footing was required by the Uniform Building Code. The Callicoats assert that Acuff was in a superior position and the misrepresentation and fraud were perpetrated by Acuff's silence. The Callicoats further assert that this issue is controlled squarely by the rules announced in *Vendt v. Duenke*, 210 S.W.2d 692, 699 (Mo. App.1948) and *Barylski v. Andrews*, 439 S.W.2d 536 (Mo.App.1969). Neither of these authorities controls the present case.

The *Barylski* case was a case involving the purchase of a residence. The evidence disclosed deliberate and intentional concealment by the seller of interior damage caused by a prior fire. Such evidence is lacking in the present proceedings.

The *Vendt* case was an action in fraud based upon silence. In *Vendt*, the court clearly ruled that mere silence can amount to actionable fraud if such silence is related to a material fact known to the party to be held responsible, and the existence of a duty on the responsible party's part to disclose such fact. The duty may arise from a relationship of trust, confidence, inequality

of conditions or superior knowledge which is not within the "fair and reasonable reach" of the complaining party. The court went on to rule that an action in fraud could not lie where the evidence failed to show a vendor's agent had knowledge of the alleged defect or where the evidence failed to show knowledge which could be imputed to the agent.

The evidence herein clearly shows the following: The architect who drafted the plans and specifications for the Callicoats' residence did not include a footing in the plans and specifications. The evidence also clearly reveals that the plans and specifications were submitted and approved by the building authorities of Gladstone, Missouri. The architect testified that while the Uniform Building Code called for footings, it was common practice not to add footings where the soil conditions allowed such designs. In addition, Acuff testified that the Callicoats' residence was constructed in strict conformity to the plans and specifications, and that the foundation construction was approved by an inspector of the City of Gladstone following an on-location inspection.

■ To place the Callicoats' contention in perspective, it can be stated that they showed the non-existence of the footing. However, they failed to show by sufficient evidence that the wall in question failed to meet building code requirements and that Acuff was aware of the standard. In other words, the Callicoats premise their claim for fraud and misrepresentation upon the lack of the footing and that Acuff was aware of its nonexistence, and then they presume these two facts establish Acuff's intent to defraud them. Fraud is never presumed and a mere inference thereof is also insufficient to support such a claim. *Harper v. Calvert*, 687 S.W.2d 227, 229 (Mo.App.1984).

■ The Callicoats introduced evidence showing the nonexistence of the footing. They had an expert testify as to his observation of the Callicoat residence, plus his viewing of photographs and a video tape of the damage. This expert viewed the property and the photos and video tape some sixteen to eighteen months after the damage was first observed and after repairs had been made. This expert testified that he attributed some of the residence's damage to loose fill dirt beneath the residence. This expert was then asked and testified as follows:

Q. (By Mr. Hall, attorney for the Callicoats) What is your opinion as to what caused the damage in the Callicoat home on October 15th, 1983?

MR. HAMBRICK: Same objection.

THE COURT: Same ruling. Answer the question.

A. I feel that the cause of the problem was settlement of the subsoil below the floor slab, not being able to carry the weight, and the construction above it.

\* \* \* \* \* \*

Q. And let me ask you this, Mr. Van Deurzen. If in fact there had been footings under this loadbearing wall as required by the Uniform Building Code, what if any effect would that have had if this settlement situation had occurred?

MR. HAMBRICK: Object. No proper foundation for the question, Your Honor.

THE COURT: Overruled. Answer it.

A. I believe that if there had been a footing that had extended below the surface of the ground a sufficient depth to protect the ground from changes in moisture, that the settlement would not have occurred.

It is readily observed that the testimony of the expert failed to establish any intent to deceive by Acuff.

As part of their case, the Callicoats called John Acuff as an adverse witness. The review of the entire testimony of Acuff fails to establish any intent to deceive the Callicoats. Acuff testified that he was not aware of the nonexistence of the footing until some eleven years after the residence was constructed and this matter was brought to his attention by the Callicoats. In addition, Acuff testified he caused the residence to be constructed in conformity with the plans and specifications estab-

lished by the architect. Contrary to the Callicoats' conclusion that Acuff's fraud and misrepresentation were caused by his silence, the evidence failed to establish that Acuff made any representation of the existence of the footing or that they relied upon such a representation. *See Alexander v. Johnson Furnace Co.*, 543 S.W.2d 539 (Mo.App.1976).

Simply stated, the evidence introduced by the Callicoats failed to support their allegation of fraud and misrepresentation. The trial court did not err by its entry of summary judgment to the favor of Acuff on Count II of Callicoats' petition. Point (1) is ruled against the Callicoats.

Under their point (2), the Callicoats assert that the trial court abused its discretion by refusing to allow them to recall John Acuff at the close of their evidence.

As noted above, the record discloses that the Callicoats called John Acuff as an adverse witness during the presentment of their case in chief. Before the Callicoats rested their case, they again called Acuff as a witness. The excerpt from the record *infra* discloses what occurred:

> MR. HALL: Plaintiff would recall Mr. John Acuff to the stand.
>
> MR. HAMBRICK: Your Honor, we object.
>
> THE COURT: No; you don't have any right. You've finished with him already. You'll have to show me why you want to do that, counsel. You can't just recall him.
>
> [Proceedings at the bench:]
>
> THE COURT: You had an opportunity. I'm not going to let you call him two or three times, whether you're finished with him or not.
>
> MR. HALL: *That's true. The purpose of recalling him to the stand is to ask about other similar complaints that he's had, that are similar to the complaints of the instant—in the Callicoat —*
>
> THE COURT: That's denied. Request denied. (emphasis added)

1. Section 407.025 now appears in RSMo 1986.

The above underlined portion of the record is, at this point, asserted as an offer of proof by the Callicoats.

First, the record is quite clear that the examination of Acuff by the Callicoats was unrestricted. The Callicoats' purpose in attempting to recall Acuff was purportedly to ask him about other claims or lawsuits. This matter was not covered by the direct or the cross-examination of Acuff during his testimony. The area sought to be inquired into by the Callicoats went beyond the scope of both the direct and cross-examination of Acuff. The trial court has discretion to allow or disallow the recall of a witness and unless an abuse of that discretion is established, any ruling thereon will not be disturbed on review. *State v. Remspecher*, 542 S.W.2d 24, 25 (Mo.App. 1976). In addition to having failed to make a proper offer of proof, the Callicoats have failed to establish that the trial court abused its discretion. Point (2) is ruled against the Callicoats.

Under their point (3), the Callicoats contend that the trial court erred in entering summary judgment for Acuff upon their claim that acts and omissions by Acuff violated the Missouri Merchandising Practices Act, § 407.025.1, RSMo 1978 [1], which reads as follows:

> **407.025. Civil action to recover damages-class actions authorized, when-procedure.—**
>
> 1. Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevail-

ing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

The Callicoats base their entire argument under this charged error upon the assumption that the construction and sale of their residence to them by Acuff constituted *services* within the meaning of the above act.

Contrary to the assertions of the Callicoats, this point is decided squarely by the rules announced in the cases of *Detling v. Edelbrock,* 671 S.W.2d 265, 272 (Mo. banc 1984); *Pointer v. Edward L. Kuhs Co.,* 678 S.W.2d 836, 841 (Mo.App.1984); and *Schimmer v. H.W. Freeman Construction Company,* 607 S.W.2d 767, 769 (Mo.App. 1980).

*Detling* rules that the statute does not apply to rental or lease agreements between a landlord and tenant. *Pointer* rules that a contract for broker's services regarding the sale of real property was "service" within the meaning of § 407.025.-1, but that the act does not allow a private right of action for real estate transactions. *Schimmer* declares the general rule that § 407.025.1 does not apply to transactions involving real property because real property is not merchandise within the act.

The Callicoats argue herein that pursuant to the contract with Acuff, there were purchases of Acuff's services within the meaning of § 407.025.1. They cite to *Jim Walter Homes v. Mora,* 622 S.W.2d 878, 882 (Tex.App.1981). The issue has not been ruled in Missouri. Reliance upon *Jim Walter Homes,* however, is misplaced. In that case, the Texas court was providing interpretation of the Texas Deceptive Trade Practices Act. Not only is the wording of the Texas act different from our own statute, but the Texas act speaks to false, misleading, or deceptive conduct relative to the representation "that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model ..." *Id.* at 882. Missouri law does not address the issue of unlawful merchandising practices in the same manner as does the Texas law. *Jim Walter*

*Homes* is found to be neither persuasive nor controlling.

The record herein clearly reveals that the parties contracted for the construction of and purchase/sale of real property. Regardless of the artful argument presented by the Callicoats, this court concludes that the transaction between the parties was one for real property and thus not within the meaning of § 407.025.1. *Schimmer, Detling,* and *Pointer, supra.* As noted in *Detling,* our state supreme court declared, "The legislature specifically excluded real estate transactions from the scope of the private right of action provision." *Detling, supra,* at 272–73. There is no question that the evidence herein discloses the transaction between the parties was for real estate or real property and it must follow that the Callicoats cannot maintain any action relative to that transaction under or pursuant to § 407.025.1. Point (3) is ruled against the Callicoats.

Under their final point, the Callicoats assert that the trial court erred in the submission of the verdict-directing instruction. The challenged instruction reads as follows:

### INSTRUCTION NO. 6

Your verdict must be for plaintiffs if you believe:

First, defendant sold and plaintiffs purchased a house located at 3700 Brooktree Lane, Gladstone, Missouri, and

Second, when sold by defendant the house was not reasonably fit for use as a residence, and

Third, plaintiffs used such house for a residence, and

Fourth, within a reasonable time after plaintiffs knew or should have known the house was not reasonably fit for use as a residence, plaintiffs gave defendant notice thereof, and

Fifth, as a direct result of such house being not reasonably fit for use as a residence, plaintiffs were damaged.

The above instruction is MAI 25.08 modified.

The Callicoats claim error in the above instruction because under paragraph Second, it required the jury to find the house was not reasonably fit when sold to them. They reason that this placed an impossible burden upon them and "upon other plaintiffs in litigation involving real estate in that frequently defects do not develop or manifest themselves in homes until years after they are sold." The Callicoats conclude that they should not be penalized for failing to have submitted another instruction other than MAI 25.08 modified because they would have been presumed to have committed prejudicial error. They cite to *Eckert v. Dishon*, 617 S.W.2d 649 (Mo.App. 1981).

The record herein reveals that the now-challenged instruction was, in fact, submitted by the Callicoats and they offered no objection to said instruction, nor did they offer to the trial court any other instruction. In their brief, the Callicoats admit they offered the instruction "because this is the instruction propounded in MAI for use in such a case." Now, on this appeal, they charge the trial court with error for the submission of the instruction. They premise their charged error upon their claim that such instruction places an undue burden upon them as plaintiffs.

Acuff has brought to this court's attention the fact that the Callicoats have failed to properly preserve this alleged error upon their failure to comply with Rule 78.-07 in that they failed to note an objection to the instruction in their motion for new trial. *St. John Bank & Trust Co. v. City of St. John*, 679 S.W.2d 399, 404 (Mo.App.1984). Acuff's assertions are supported by the record. Nonetheless, this court ex gratia has taken up the matter under Rule 84.-13(c) and reviewed the matter for plain error.

The Notes on Use and the Committee's Comment establish that MAI 25.08 is the instruction to be submitted in actions for breach of implied warranty. The use of an MAI instruction is mandatory where there exists an applicable MAI instruction, and the failure to use such instruction is

presumed to be prejudicial error. *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 837 (Mo.App.1984). *See also* Rule 70.02(b).

Review of the now-challenged instruction leads to the conclusion that the submission of same was in conformity with MAI and it further follows there was no error, plain or otherwise, in the submission of the now-challenged instruction. Point (4) is ruled against the Callicoats.

Judgment affirmed.

All concur.