**JEP ENTERPRISES, INC.,**
**Respondent,**

v.

**WEHRENBERG, INC., Appellant.**

**No. ED 77567.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 6, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 2001.

Application to Transfer Denied
May 29, 2001.

John M. Nations, St. Louis, MO, for appellant.

Stanley E. Goldstein, Eli Karsh, Liberman, Goldstein & Associates, Clayton, MO, for respondent.

Before AHRENS, P.J., CRANDALL and JAMES R. DOWD, JJ.

JAMES R. DOWD, Judge.

Appellant, Wehrenberg Inc., entered into a lease with respondent, JEP Enterprises, Inc., for use of a theater in 1987. Upon expiration of the lease, Wehrenberg removed 650 seats from the theater without JEP's approval, damaging the theater floor. JEP sued Wehrenberg for conver-

sion of the seats and damages. The case was submitted on cross motions for partial summary judgment on the issue of liability only. The parties stipulated to the amount of damages if JEP were to prevail on summary judgment. The trial court denied Wehrenberg's motion and awarded summary judgment to JEP. We affirm.

In 1968, JEP bought a fully functioning theater in the Lake of the Ozarks. The building was designed and constructed as a live theater. It contained a raked concrete floor, 1000 seats bolted to the floor, stage and backstage areas, a concession stand and ticket booth. In 1970 the building was converted to a movie theater. On April 1, 1973 JEP agreed to a 20 year lease with Jablonow–Komm Theatres. Shortly thereafter, and with the approval of JEP, Jablonow removed the old wooden seats and installed 733 fabric-covered plastic theater seats. Jablonow then transferred its interest in the lease and property to RKO Mid–America Theatres, Inc. In May of 1982, JEP and RKO amended the 1973 lease, giving RKO the right to remodel the theater so that it had two screens instead of one for an increase in monthly rent. Two years later RKO transferred its interest in the lease and property to Commonwealth Theatres of Missouri. As part of this transfer, RKO gave Commonwealth a "Bill of Sale and Assignment" that purported to transfer to Commonwealth 654 theater seats, "free and clear of all liens, encumbrances, claims, clouds, charges, equities, or imperfections of any kind or nature …" In May 1985, Commonwealth transferred its interest in the lease and property to Wehrenberg.

In April 1993, after the lease had expired and without JEP's approval, Wehrenberg uprooted the theater seats from the floor, breaking sections of concrete and leaving behind only the inclined floor, pocked with 2,600 holes. When JEP discovered the empty theater they complained to Wehrenberg. Wehrenberg offered to return the seats; but JEP rejected the offer. JEP filed suit against Wehrenberg on January 30, 1998, seeking direct and consequential damages for conversion of the seats. Both parties moved for partial summary judgment, claiming ownership of the seats. On February 22, 1999, the trial court denied Wehrenberg's motion and sustained JEP's motion for partial summary judgment. The parties stipulated to the amount of damages, provided Wehrenberg's right to appeal the grant of partial summary judgment on the issue of ownership was preserved. The court then assessed damages in accordance with the stipulation of the parties and entered judgment for JEP. Wehrenberg appeals.

■■■ When considering an appeal from the grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* "The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. Summary judgment tests simply for the existence, not the extent, of these genuine disputes." *Id.* at 378. Because the propriety of summary judgment is purely an issue of law, our review is *de novo. Id.* at 376.

■■■ This was an action for conversion. Conversion is the unauthorized assumption and exercise of the right to ownership over personal property of another to the exclusion of the owner's rights. *Manzer v. Sanchez*, 985 S.W.2d 936, 940

(Mo.App. E.D.1999). The following three elements must be established to prove conversion: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession. *Id*

In its first point on appeal Wehrenberg argues that the trial court erred in granting partial summary judgment to JEP because Wehrenberg was the rightful owner of the seats under both the lease and the bill of sale. The lease, in relevant part, provides:

> Lessee shall have the right to make, at Lessee's own expense, ... alterations on or additions to ... the building and appurtenances ... provided, that Lessee shall not make any additions or alterations which involve structural or physical changes ... to the building or appurtenances ... unless the Lessor has approved the same in writing ... *All* of said alterations, additions, and improvements, *except trade fixtures and improvements installed at the expense of Lessee,* shall inure to the benefit of Lessor and shall become part of the realty.

(emphasis added). Wehrenberg argues that because the theater seats were installed at the expense of its predecessor in interest and are either "trade fixtures" or "improvements," they fall within the exception and are Wehrenberg's property.

▮ We must at the outset reject Wehrenberg's argument that the lease entitles it to all "improvements" installed at lessee's expense. "The cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995). The terms of a contract are read as a whole to arrive at the intention

of the parties. *Brackett v. Easton Boot and Shoe Co.,* 388 S.W.2d 842, 848 (Mo. 1965). Each term and clause is construed to avoid an effect that would render other terms and provisions meaningless. *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo.App. W.D.1995). A construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is, therefore, preferred to one that leaves some of the provisions without function or sense. *Parker v. Pulitzer Publishing Co.,* 882 S.W.2d 245, 249–50 (Mo.App. E.D.1994).

Under Wehrenberg's interpretation of the lease the exception consumes the general rule. The general rule, contained in the same sentence as the exception, provides that "all alterations, additions *and improvements* ... installed at the expense of lessee, shall inure to the benefit of Lessor and shall become part of the realty." (emphasis added). If we accept Wehrenberg's argument, the only improvements the lessor would be entitled to are those actually paid for by the lessor. This would negate the dominant language of the contract that improvements made by lessee shall become part of the realty. The most sensible interpretation of this language, therefore, is that Wehrenberg had the right to remove only their "trade fixtures" or "trade improvements." *See Osborn v. Boatmen's Natl. Bank of St. Louis,* 811 S.W.2d 431, 436 (Mo.App. E.D.1991)(refusing to adopt an interpretation that would allow the exception to swallow the rule). Wehrenberg provides no argument that the seats are "trade improvements."

Wehrenberg does, however, argue that the seats are trade fixtures. BLACK'S LAW DICTIONARY defines 'trade fixture' as:

> Articles placed in or attached to leased property by the tenant, to facilitate the

trade or business for which he occupies the premises, or to be used in connection with such business, or promote convenience and efficiency in conducting it. Such personal property as merchants usually possess and annex to the premises occupied by them to enable them to store, handle, and display their goods, which are generally removable without material injury to the premises.

BLACK'S LAW DICTIONARY 638–39 (6th ed.1990).

Wehrenberg cites only one case where theater seats were found by a court to be trade fixtures: *Ballard v. Alaska Theater Co.*, 93 Wash. 655, 161 Pac. 478 (1916). In *Ballard* the lessees contracted to *erect* a theater building. *Id.* at 479. The lease provided that the premises should be yielded up at the expiration of 15 years "in a good and tenantable condition." *Id.* The court found that there was "no agreement that [the theater building] should be furnished in any particular manner" and that "the terms of the lease would have been complied with by the construction of the building and the payment of the rent, without furnishing it in any manner or putting it to any particular use." *Id.* at 481. Accordingly, the court held that the theater seats were trade fixtures and the property of the lessee. *Id.* at 482.

This case is distinguishable. First, Wehrenberg's predecessor in interest leased a fully functioning theater, including seats. It did not, as in *Ballard*, lease a parcel of land and then *erect* a theater building. Second, the lease in *Ballard* required the lessee only to yield up the premises in "good and tenantable condition." The lease here provides: "The Lessee and all holding under said Lessee agrees to ... surrender said premises at the termination of this lease *in substantially the same and in as good [a] condition as received*, ordinary wear and tear

excepted." (emphasis added). The record makes clear that the theater was not returned to JEP in substantially the same and in as good a condition as when received: it had no theater seats and the concrete floor was pocked with 2,600 holes.

The only Missouri case to determine if theater seats are trade fixtures is *Spalding v. Columbia Theater Co.*, 189 Mo.App. 629, 175 S.W. 269 (1915). In *Spalding*, as in this case, the lessee, at its own expense, replaced older chairs with new chairs. The court found for the lessor, saying:

the original chairs were not retained and reinstalled in order that the premises might be surrendered in the condition in which they were when let. We have no doubt that by removing fixtures forming an essential part of the equipment of the building for the purposes for which it was adapted, and disposing of the same so that they could not be reinstalled and substituting others in their stead, the lessee must be held to have permanently affixed the latter to the freehold so that they became the property of the landlord.

*Id.* at 269–70. We find the rationale in *Spalding* applicable here. The lease required Wehrenberg to surrender the premises in substantially the same condition as it was leased. When it was originally leased it had chairs fastened to the floor so that it could function as a theater. Wehrenberg was therefore required to return the theater with seats fastened to the floor. By uprooting the seats and failing to install other seats, Wehrenberg violated the lease. Under these circumstances, we cannot find that the seats Wehrenberg removed were trade fixtures. Point denied.

 In its second point, Wehrenberg argues that the trial court erred in awarding partial summary judgment to JEP because JEP, the movant, pleaded facts sufficient to establish Wehrenberg's

affirmative defense of estoppel. Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) an action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Brown v. State Farm Mutual Automobile Insurance Company*, 776 S.W.2d 384, 386 (Mo. banc 1989) (internal citation and quotation omitted). Wehrenberg argues that these elements are satisfied because in the lease JEP relinquished all claims of ownership over "trade fixtures and improvements" installed by the lessee; JEP then granted a previous tenant approval to install new seats; and JEP sent letters to previous tenants stating that JEP relinquished all property interests in "trade fixtures traded in or about the leased premises." Wehrenberg argues that its predecessor relied on these statements when installing the new seats and that in taking over the lease, Wehrenberg itself relied on these statements. To the extent this argument assumes that the seats are trade fixtures we reference the earlier portion of this opinion that concludes they are not.

The gravamen of Wehrenberg's estoppel argument is that the approval JEP granted to Jablonow (Wehrenberg's predecessor in interest) to install new seats is a representation that if relied on is sufficient to negate the express terms of the lease. Wehrenberg relies on *D'Anna v. Rupp*, 32 S.W.2d 136, 138 (Mo.App.1930) for the proposition that:

> a landlord will, by his acts and conduct, be estopped from relying upon a condition of the lease where, with knowledge of the facts and without objection, he suffers his tenant to make improvements or expenditures on or in connection with the property ...

In *D'Anna*, the lessor sought to take advantage of a provision in the lease requiring that "alterations shall be made only after obtaining the written consent of said lessor," despite the fact that lessor had *verbally* consented to those improvements. *Id.* at 137. This case is quite different. Here Wehrenberg seeks a conclusion that JEP's approval to install new seats caused it to forfeit ownership of the seats granted under other provisions of the lease. We fail to see how this approval, sanctioned by the lease, supports a conclusion that certain other lease terms are no longer operative. Nor does Wehrenberg explain why that approval, envisioned by the lease, would work an injustice necessary to estop JEP from asserting ownership rights conferred by other provisions in the lease. Finally, estoppel is an equitable principle. *Pointer v. Edward L. Kuhs Co.*, 678 S.W.2d 836, 844 (Mo.App. E.D.1984). Here, Wehrenberg failed to seek approval from JEP to remove the seats as required by the lease, or to seek a judicial determination that the seats were theirs. It simply tore the seats from the theater. Point two is denied.

■ In its final point, Wehrenberg claims that the trial court erred in granting partial summary judgment because JEP pleaded facts sufficient to establish Wehrenberg's affirmative defense of failure to mitigate damages. Wehrenberg maintains that JEP's rejection of its offer to return the seats is a failure to mitigate damages. This argument ignores the stipulation entered into by the parties. In that stipulation the parties agreed to the amount of damages JEP is to recover if Wehrenberg loses their appeal of the partial summary judgment on liability. Wehrenberg cites no legal authority for the proposition that their affirmative defense can survive a stipulation by the parties establishing the amount of damages after a final judgment has been entered. *See*

Rule 53.03(b). Wehrenberg's final point is moot because failure to mitigate damages evaporates as an affirmative defense when the parties file an unqualified stipulation establishing the amount of damages. Point denied.

The trial court's judgment is affirmed in all respects.

AHRENS, P.J., and CRANDALL, concur.