Patti J. PROFFER n/k/a Patti J. Grady, Appellant/Plaintiff,

v.

Arthur W. RANDALL, Respondent/Defendant.

No. 53931.

Missouri Court of Appeals, Eastern District, Division One.

June 28, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 1988.

Application to Transfer Denied Sept. 13, 1988.

Michael Foss Merritt, Creve Coeur, for appellant/plaintiff.

Scott C. Harper, Clayton, for respondent/defendant.

GARY M. GAERTNER, Presiding Judge.

Appellant, Patti J. Proffer, n/k/a Patti J. Grady (hereinafter referred to as Tenant),

appeals from the order of the trial court granting a directed verdict in favor of respondent, Arthur W. Randall (hereinafter referred to as Landlord), in an action for damages to personal property. On appeal, Tenant argues that the trial court erred in granting a directed verdict; she alleges that she presented evidence to establish liability by Landlord for damages to Tenant's personal goods stemming from a violation of the implied warranty of habitability in a leasehold agreement. Finding Tenant's claim to be without merit, we affirm.

Tenant and her daughter rented a house from Landlord. On or about December 17, 1983, all water ceased to flow to the premises and Tenant sent notice of the loss of water to Landlord. Landlord instructed Tenant to turn up the heat and to use a blow dryer on the water pipes. Tenant followed Landlord's instructions with little success. Landlord also stated that he would try to get a plumber. Later, Landlord notified Tenant that he was having difficulty obtaining a plumber because of the large number of frozen pipes throughout St. Louis, and that she could contact her own plumber. Tenant made no attempt to contact a plumber and on December 30, 1983, the premises flooded, damaging Tenant's furniture and personal items. Tenant immediately informed Landlord of this condition and Landlord then turned off the water flow to the home, after the water company had attempted but failed to do so.

Tenant brought an action against Landlord for damages to her property stemming from the flooding occasioned by the broken pipes and for Tenant's loss of wages during the time it took to remove her property from the house. After presentation of Tenant's evidence, Landlord filed a motion for a directed verdict. The trial court issued an order granting Landlord's motion. Tenant appeals from that order.

In reviewing a directed verdict we look to whether sufficient facts have been presented to form a prima facie case. In deciding whether a party made a submissible case, the appellate court must consider the evidence in the light most favorable to the party moved against. *Burrow v. Moyer*, 519 S.W.2d 568, 570 (Mo.App., E.D.1975). The reviewing court must consider the evidence favorable to the appellant as true and give appellant the benefit of every inference of fact which can reasonably be drawn. *Day v. Wells Fargo Guard Service Co.*, 711 S.W.2d 503, 504 (Mo.1986). In the present case, the trial court could have reasonably found that Tenant did not present sufficient evidence to hold Landlord liable for damage to her personal property. Tenant presented no evidence to show that Landlord violated the implied warranty of habitability when the premises became flooded. Although we note that Tenant testified that she provided notice of prior problems with her plumbing, Tenant did not produce evidence indicating she provided notice to the Landlord of any latent defects in the plumbing that would result in flooding.

In *Detling v. Edelbrock*, the Supreme Court of Missouri recognized that a lease for a residential premise is both a contract and a conveyance of real property. *Detling v. Edelbrock*, 671 S.W.2d 265, 269 (Mo. banc 1984). In a lease of residential property the landlord impliedly warrants the habitability of the leased premises. *Id.* at 270. The landlord warrants:

> that the dwelling is habitable and fit for living at the inception of the [lease] and that it will remain so during the entire term[;] ... [t]hat he will provide facilities and service vital to the life, health and safety of the tenant and to the use of the premises for residential purposes.

*Id.* (citing *King v. Moorehead*, 495 S.W.2d 65, 75 (Mo.App., W.D.1973)). The habitability of a leased premise is measured by community standards as shown by local housing and property maintenance codes. *Id.* The warranty of habitability, therefore, requires that a landlord establish and maintain a residential property in a reasonably safe and healthy condition based on community standards during the term of a lease. The tenant as well is under an obligation to give notice to the landlord of any deficiency or defect not known to the landlord and to allow a reasonable time for repairs. *Id.*

The warranty does not, as Tenant seems to contend, guarantee that a landlord can predict and prevent every problem arising from the world at large. The facts of this case are similar to the situation before the court in *Henderson v. W.C. Haas Realty Management, Inc.,* 561 S.W. 2d 382 (Mo.App., W.D.1978). In *Henderson,* a defect in the wiring of an apartment building caused a fire which destroyed the building and personal property of the residents. The court held that there was no basis for holding the landlord liable for damage to the tenants' personal property based on the implied warranty of habitability. *Id.* at 387. To find liability in the present case would result in "imposing strict liability upon a non-builder landlord for latent defects, rendering the premises unsafe or dangerous, absent some actual or constructive notice or knowledge of the defects." *Id.* Tenant did not provide evidence that she gave notice of any latent defect in the premises that would lead to flooding, nor did she show that Landlord had constructive notice of such defects and therefore knew or should have known of such defects.

Furthermore, to hold a landlord liable for damage to a tenant's personal property arising from latent defects would make the landlord an insurer of the tenant's property. A landlord is liable only for negligence in failing to remedy defects in, or in the improper management of, the water system under his control, which result in damage to the personal property of a tenant. 52 C.J.S. *Landlord & Tenant* § 423(4)(e) (1968). This general rule does not extend, however, to the point that the landlord must keep a water system in such a state of repair that absolutely no damage will occur to the property of the tenant, absent negligence or misfeasance. *Id.* The Tenant in this case did not ground their case in negligence.

Even assuming Tenant fulfilled the requirements for a prima facie case constituting the violation of the implied warranty of habitability, she would not be entitled to compensation for her damaged personal goods. Although proof of such a breach entitles the tenant to pursue traditional contract remedies, generally "[d]amages are reasonably measured by the difference between the agreed rent and the fair rental value of the premises as they were during occupancy by the tenant in the unhealthful or unsafe condition." *King v. Moorehead,* 495 S.W.2d at 76. Tenant, therefore, would only be entitled to an offset in her rent if she had continued to reside in the house after the flooding. In this case, Tenant promptly moved out of the house after the premises were flooded. Tenant did not submit evidence as to damages flowing from her diminished use of the leased premises, nor did she show damages resulting from the loss of an advantageous lease.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.