**Andrew CHIODINI, Appellant,**

v.

**Genia FOX and James Winkler, Respondent.**

**No. ED 87449.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 3, 2006.

Application for Transfer Denied
Dec. 19, 2006.

Andrew E. Chiodini, North Bergen, NJ, pro se.

James E. Klenc, St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellant, Andrew Chiodini ("Chiodini"), appeals from the judgment of the Circuit Court of St. Louis County, following a bench trial, entered in favor of Respondents Genia Fox (individually "Fox") and James Winkler (individually "Winkler") (collectively "Fox–Winkler"). The trial court found that Chiodini's breach of lease claim was meritless because he breached the implied warranty of habitability and awarded Fox–Winkler their security deposit as damages. We affirm.

Chiodini owns a house in Wildwood, Missouri with a partially finished basement. The unfinished portion of the basement contains a room that Chiodini was in the process of turning into a billiard room, but, as of May 2003, the construction was not completed.

Chiodini wished to lease the house so he listed it with a rental agency called Apartment Search. Through that service Fox–Winkler located the listing and Fox viewed the house on April 26, 2003. Winkler was unable to view the house at that time because he was out-of-state. Regardless, Fox–Winkler signed a one-year lease on May 3, 2003 and Chiodini signed it on May 8, 2003. Winkler viewed the house during the second week in May and learned that there was exposed wiring in the unfinished billiard room. At some point thereafter Winkler allegedly informed Chiodini that they would not be taking possession of the house on June 1, 2003, the date of the commencement of the lease. In addition, Fox–Winkler's attorney sent Apartment

Search a letter on May 21, 2003 noting Fox–Winkler's intention to not take occupancy of the residence.

In an attempt to assuage Fox–Winkler's concerns, Chiodini executed an addendum to the lease ensuring, *inter alia* the completion of the billiard room and a compensation scale for certain construction items if they were not completed as promised. The record reflects that neither of the parties signed the addendum.

In an attempt to obtain the proper building permits and inspections, an inspector from Metro West Fire Protection District inspected the billiard room on May 29, 2003 and found a violation with the fire-blocking. The same day, a county inspector inspected the building's electrical system, revealing the violation with the exposed wires. Fox–Winkler spoke with the fire marshal on May 30, 2003 and learned that the violations in the house could not be remedied by June 1. Thus, Fox–Winkler did not take possession of the house.

Chiodini repaired the fire-blocking issue and on July 17, 2003 the fire inspector approved the premises. Chiodini repaired the electrical problem and on June 25, 2003 the electrical system was approved. New tenants took possession of the house on August 20, 2003. Chiodini obtained a Certificate of Occupancy on October 23, 2003.

On December 5, 2003 Chiodini commenced the instant action against Fox–Winkler for breach of lease. On January 21, 2004 Fox–Winkler filed an answer to Chiodini's petition, alleging as an affirmative defense that the premises were uninhabitable. On September 30, 2004 Fox–Winkler filed a counterclaim for the return of their security deposit. A bench trial was held on October 31, 2005 and, on November 16, 2005, the court entered judgment for Fox–Winkler. The trial court found that Chiodini breached the implied warranty of habitability by not possessing the appropriate permits and inspections, which would allow for Fox–Winkler's legal occupancy at the time of the commencement of the lease. The court awarded Fox–Winkler the return of their security deposit as damages. This appeal followed.

We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). We will view the evidence and all reasonable inferences in the light most favorable to the judgment and disregard contrary evidence. *Forde v. Forde,* 190 S.W.3d 521, 527 (Mo. App. E.D.2006).

■ In his first point on appeal, Chiodini argues that the trial court erred in finding that he breached the implied warranty of habitability because any code violations were *de minimis.* It is well-settled in Missouri "that a landlord impliedly warrants the habitability of leased residential property." *Detling v. Edelbrock,* 671 S.W.2d 265, 270 (Mo.1984). Habitability is measured by community standards, generally reflected in local housing and property maintenance codes. *Id.* In order to state a cause of action for breach of an implied warranty of habitability, the tenant must prove four elements:

> (1) entry into a lease for residential property; (2) the subsequent development of dangerous or unsanitary conditions on the premises materially affecting the life, health and safety of the tenant; (3) reasonable notice of the defects to the landlord; and (4) subsequent failure to restore the premises to habitability. *Id.*

But minor housing code violations not affecting the habitability of the property are not considered breaches. *Id.*

■ First, Fox–Winkler must prove entry into a residential lease. This element is undisputed.

Second, there must be dangerous or unsanitary conditions materially affecting the life, health, or safety of Fox–Winkler. The exposed electrical wires clearly posed a risk to Fox–Winkler and their children. Additionally, the fire-blocking issue posed a risk, inasmuch as the billiard room did not have the required protection if a fire were to start. Thus, the exposed electrical wires and fire-blocking issue constituted dangerous conditions materially affecting the safety of Fox–Winkler. Accordingly, these code violations were not merely *de minimis* as Chiodini contends.

The third element, notice, is also undisputed as Chiodini was aware of both defects due to notice of the violations from the inspectors. *See id.* at 270–71 (stating that a citation from building inspectors is sufficient to prove reasonable notice).

And finally, Chiodini must have failed to repair the defects. Although Chiodini successfully repaired the electrical and fire-blocking defects by the end of June 2003, he failed to obtain an occupancy permit until October 23, 2003. Without an occupancy permit, Fox–Winkler could not have legally occupied the premises. *See* Saint Louis County, Mo., Building Code section 118.5 (2000) (stating failure to obtain a certificate of occupancy constitutes a violation of the code and subjects one to penalties prescribed in the code).

Therefore, the trial court did not err in finding that Chiodini breached the implied warranty of habitability. Point denied.

■ In his second point on appeal, Chiodini contends that the trial court erred in finding that he breached the im-

plied warranty of habitability because Fox–Winkler did not provide him with reasonable time to remedy the defects.

■ A tenant must give a landlord notice of the defects if the landlord is unaware of them, as well as reasonable time to alleviate the defects. *Detling,* 671 S.W.2d at 270.

Chiodini argues that he was willing to put plates over the exposed electrical wires, as stated in the lease addendum, but he does not address the fire-blocking issue, save from arguing that it was merely a *de minimis* violation. Despite the temporary remedy proposed by Chiodini for the electrical wires, he did not and could not have obtained an occupancy permit by June 1, 2003, ensuring Fox–Winkler's legal occupancy of the house. In fact, it should be noted that Chiodini did not obtain an occupancy permit for the residence until October 23, 2003. We find that that is not a reasonable amount of time to remedy the defects. Thus, this point on appeal is without merit. Point denied.

■ In his third point on appeal, Chiodini contends that the trial court erred in its calculation of damages. Chiodini argues that the lease addendum provided a compensation scale if certain construction items were not completed by the dates provided. It stated that Fox–Winkler could deduct $60 from their rent for each item not completed on time. Under this argument, Chiodini believes that $160 should be deducted from Fox–Winkler's damage deposit because nearly everything on the list was completed as scheduled. But this argument is not supported by any authority, and furthermore, the record reflects that neither of the parties signed the addendum to the lease. Therefore, this point on appeal is without merit. Point denied.

Based upon the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III, P.J. and ROBERT G. DOWD, JR., J., concur.